Your argument today is 20-1052 Union Telecom v. United States. Counsel, please proceed. Chief Judge Moore and may it please the Court. Andrew Paul Cavill on behalf of Union Telecom. This Honorable Court should reverse Judge Wheeler's denial of Union Telecom's request to recall witnesses Farber and Shaw under Rule 63, vacate the opinion and judgment that remand the case for new trial before a new judge who will take and observe the testimony of the witnesses before making fresh findings of fact and conclusions of law. Subject, of course, to this Court's questioning, I would like to focus my argument on three main points, which are the following. First, I'd like to point out that there appears to be no real dispute about what the elements of Rule 63 are. Second, I would like to explain that the elements have been met for both witnesses, even though Union Telecom need only show that the elements have been met for one of those witnesses. Counselor, this is Judge Graham. With respect to the elements of Rule 63, it seems to me that Mr. Shaw testified he had no idea about IDT's position. In fact, I don't see anything in the record that indicates to me that he has any personal knowledge as to any type of fact that would be a material fact if it was to be disputed. I simply don't see what Mr. Shaw would be testifying to other than just speculation. Can you respond to that? Certainly, Your Honor. Mr. Shaw testified that he was, number one, familiar with, well, that he had a great deal of experience in the prepaid telephone card industry, and he testified that in all cases, the carriers would always break down, I'm sorry, the carriers would always include the tax within the price of the card itself, and that they would not itemize that tax. Okay, so he has general knowledge of the industry, but he never did work at IDT or UTA. Can you show me where in the record we can find that he's got personal, observable knowledge as to the excise taxes and the payment of them? Well, yes, Your Honor. He did testify that when the cards were purchased by Union Telecom that he did so by accessing the IDT Oasis system. Yeah, I understand that. He testified generally as to the industry practices, but did he testify as to personal knowledge on the particular issues that you're asserting are in dispute? Well, again, one of the issues at trial was whether Union Telecom purchased the cards directly from IDT, and Mr. Shaw did testify that Union Telecom purchased the cards from IDT by ordering them on the IDT Oasis system. He did it personally, and so he had personal knowledge of actually ordering the cards by logging on to IDT's own system and ordering them. So that would be one example. Yes, but counsel, I have some of the same concerns that Judge Reyna is suggesting, which are, for example, one basis upon which this case was decided is that IDT, there's no evidence they paid any excise tax on prepaid telephone cards. And so while Mr. Shaw may have had personal knowledge about random things associated with this case, if he didn't have personal knowledge about the issue about which, or one of the issues about which this case was decided that is dispositive, then isn't Judge Wheeler's error in not permitting you to have his testimony reoccur simply harmless error? I don't think that it's harmless error. Why don't you go exactly to the point I raised? Mr. Shaw did not have any personal knowledge about whether IDT paid excise tax on prepaid telephone cards. You can't sue the government to recoup taxes if none were paid, right? Not in the court system. Well, Your Honor, in answer to your question, a very important point in this case is that there's a difference between the payment of the tax and the remittance of the tax. Similar to, for example, FICA cases, payroll taxes and there's a third-party tax collector who is the government's agent. And I think that it... Theoretically, counsel, perhaps Union Telecom has a claim against IDT for having taken money away from it, but there isn't a claim against the government if IDT didn't actually pay a tax. I disagree with that, Your Honor. The statute states that there is no availability for the taxpayer to sue the tax collector. That is at 26 sue for a refund of tax, Union Telecom must sue the government, which it has done. But you're asking for a refund of tax and there's no evidence any tax was paid. There is evidence that the tax was paid, although I think all agree that IDT did not remit the tax to the government. So again, IDT is the government's statutory tax collector, and therefore the government's agent. Well, now Mr. Shaw testified that he had no idea about IDT's position with regard to the federal excise tax on the phone cards. That's what he testified. He already testified, I have no idea about IDT's position with regard to FET. And that kind of makes sense. He never did work at IDT or ETA, did he? No. Mr. Shaw did not work for IDT or ETA, that is correct. But I think that one key to the point that Your Honor is driving at is, again, that there's a difference between payment and remittance. Mr. Shaw... No, no, no, no, no. The point I'm driving at is whether Mr. Shaw has anything to testify about, whether Judge Wheeler erred in his refusal to bring Mr. Shaw back when the record already shows that he's got no idea about what IDT's position is about. He's already testified everything he knows, and it's all general information about the industry, how the industry works, some of its practices, but he's got no idea as to IDT's position. He doesn't know what IDT's internal position was, but I don't think that that matters in the case because Mr. Shaw can testify... If it doesn't matter, why is it error for Judge Wheeler to refuse to bring him back? It doesn't matter. Well, what I'm saying is that the... It's error because Mr. Shaw did testify incredibly that Union Telecom ordered the cards directly from IDT, and that the cards included the tax. I... Those are two separate issues, and Mr. Shaw's testimony does not need to be material and disputed on every single issue in the case. He did testify with... Counsel, this is Judge Hughes. I know you don't agree with this, but let's just assume for purposes of this question that I think that in order for your client to get a tax refund, you have to show that a tax was actually paid to the IRS. Do either of these witnesses have personal knowledge of a tax being paid to the IRS? And to clarify, if I may, when your honor says paid to the IRS, is that in the way that we understand remittance to work? What we mean by remittance? I mean somebody actually collected taxes and turned them over to the United States government. Do either of them have any knowledge that taxes were actually turned over to the United States government? In terms of remitted from IDT to the government, I believe that the answer is that I think all agree IDT did not remit the tax to the government. However, in terms of whether the tax was paid, I think that both witnesses do have testimony that they can offer and that they did offer on that point. Because again, Mr. Shaw testified that in all cases, the tax was included in the price of the cards and he testified that for the cards and order them from IDT, which leads to the, it gives rise to the, at least to the inference that Union Telecom did pay the tax. Union Telecom understood itself to be paying the tax to the government's agent. And because the payment was received and that payment included the tax, the government did receive the tax through its agents. However, the government's agent did not remit the tax to the government. I see that my time is up. If the court does not have any questions at this time, I will reserve the rest of my time for the bar. Chief Judge Moore, may I ask one question before you switch? Of course. So are you conceding that, that there's no, nothing in the record that indicates that, that the IRS actually received the funds? You're saying that the funds were, the taxes were collected. And, and it seems to me the preliminary question here, the dispositive question is, did the U.S. government ever receive the taxes? I, I, I, this is a nuanced answer and if the court will permit me to make sure I get the nuance in. We agree that IDT did not remit the tax to the government and that the government during, for the cards at issue, during the period at issue, the government did not receive those funds from IDT, but that was the remittance part. I do not concede that Union Telecom did not pay the tax. It certainly did because Union Telecom was paying with the understanding that it was including its tax when it did pay the government's agent. And so in, so in that sense, the government did receive Union Telecom's tax payment. This is a, it's an analogous situation to where an employer withholds payroll taxes from an employee, but then the employer never sends them back to the government. Well, the employee is still entitled to a refund because the government has technically received the tax payment. It's just that it had a rogue agent who didn't send that money back to the government. It kept it in its pocket. That's analogous to what we have here. IDT received the funds, received the tax, Union Telecom did pay it, and it was collected at the time it was paid. But then IDT simply didn't send that tax to the government. So if that is the, you know, that's the initial dispositive question. I think we clear that hurdle because the tax was paid. Mr. Shaw did not testify consistent with what you just said. Mr. Shaw testified that he had no idea about IDT's position with regard to payment of FET taxes on the phone cards. So I appreciate your argument, but the issue here is sort of that Mr. Shaw should be forced to come back and testify. And he's already said he's got no idea about these issues that we're talking about. Well, I'm not sure if the court will allow me to respond or if I should wait until rebuttal to address that. No, go ahead and respond. Thank you, Your Honor. With respect, I do not think that it's accurate that Mr. Shaw says that he doesn't have any idea about what IDT is bought. But what IDT thinks when it's putting the rate deck together, I don't think that that really matters to ascertain whether or not the tax was paid and collected. I think that Mr. Shaw, Union Telecom, was under the impression they were paying the tax. And indeed, neither IDT nor UTA nor anyone else said any different. Mr. Farber testified that he as the CFO of UTA during the relevant period, that he did not... May I continue? Yes. Farber himself didn't find out IDT's position on the tax until after the refunds had been offered. So apparently, Farber and UTA were under the impression that the tax was being included and charged at the time. And so I do think that Mr. Shaw's testimony about whether he was making the payments and whether his understanding and Union Telecom's understanding and whether the industry practice was always to include the tax. I think that is pertinent to that issue. But again, well, material and disputed with respect to that issue. Again, though, in order to get recall, we need only show that one, if not both of the witnesses' testimonies were material and disputed. And those witnesses' testimonies do not need to be material and disputed on every single issue in the case. Counsel, I have one last question. And that is, you are distinguishing between taxes remitted and taxes paid. And I guess I'm trying to understand where this distinction comes from in the law. What is your legal support, either statute or case law, for the idea that if a company like IDT collects some tax payment, like an excise tax, but doesn't remit it to the government, you can nonetheless sue the government for a tax refund when the government never collected that payment? Because the Court of Federal Claims jurisdiction is limited to cases in which taxes were actually paid. So under what authority do you think you can sue the Court of Federal Claims under what statute or reg, even though it's undisputed, as you said, that no taxes were actually paid? I will first qualify and then answer Your Honor's question. We do dispute that the taxes were paid, in the sense that we argue that the taxes were paid. In response to Your Honor's... No, no, no. You repeatedly said that IDT never paid taxes to the government. You said that that's undisputed, that you don't dispute that fact. So the government did not collect any taxes. That, again, we do dispute that and that's the nuance. We do dispute that because although we think that IDT did not remit the taxes it collected, the government did receive payment of the taxes because IDT, its statutory collection agent, did receive the tax. So I want to be very clear that as I understood Your Honor's statement... Under what authority do you have for this remittance versus... The government, the U.S. government did not get this money. So you're suing for money to be returned that was never given. So what authority do you have that says if a company like IDT collects an excise tax, you can sue the government for a refund? Well, to begin, Your Honor, the statute at 26 United States Code section 7422C says that Union Telecom is not able to sue a collecting agent. Well, no, what that statute says is you sue the government, not government officers, right? Well, Representative, for tax alleged to be paid, and then it's treated as if the United States had collected the tax itself, which we argue it has. And then in terms of whether or not the... When you say it's treated as if the United States itself collected the tax, what do you mean it? Who is it? What statute or regulation allows you to sue the government when they didn't actually receive money? Bear with me one moment, Your Honor, as I go through the statute. Why don't you do that, and we'll address it on rebuttal. Let's hear from the government in the meantime. Ms. Avetta, can you please proceed? Thank you, Your Honor, and may it please the court, Julia Avetta for the United States. Any Rule 63 error here is harmless because no amount of testimony can establish the necessary predicate to recovery here, which is that tax was ever paid to the government. This is a suit for a tax refund. As the court has observed, to recover on its refund claim, union needed to establish as a threshold matter that there was an overpayment of tax to the government that existed to refund. In Lewis v. Reynolds, almost 100 years ago, the Supreme Court phrased it as that a claimant for a refund is not entitled to a refund unless he has overpaid his tax, and it is incumbent... Counsel, this is Judge Moore. I think what he's arguing is that IDT is an agent of the government, and that, therefore, the government did, in fact, receive this money. There is no basis on which to posit that the government being in constructive possession of funds collected by third parties creates standing or a right to a refund, particularly whereas here the factual record did not indicate that that was the case. To the contrary, the record almost uniformly established that IDT had specifically structured its prepaid telephone card business to avoid paying excise tax, to escape the imposition of the tax on the transaction where it would normally arise, and they did this by creating foreign operating subsidiaries and operating out of Puerto Rico so that the conditions under which the tax would arise were never met. So what they were doing was not collecting the tax, and they were not in constructive possession of funds, assuming that that's even a meaningful concept in a refund suit, which I'm not aware that that's a potential avenue of recovery. Here, to recover, the union would have to show that communications excise tax had been paid to the United States, and frankly, even if it could show that IDT had collected it, it would still fail to meet the bar that that money had, that money was not remitted to the United States. This is not analogous to a suit where taxes are withheld by an employer, and an employee gets the putative benefit of having paid the tax directly to the government, such as standing to file a refund suit. This is trying to, but the government, of course, in that situation would have recourse against the recalcitrant collector. We have a method of recovery in the Internal Revenue Code to pursue individual liability of an employer who failed to pay over collected withholding taxes. Oh, is an employee counsel, is an employer in that situation an agent of the government? In a traditional agency sense, yes, but the liability, the ability of the government to pursue that employer for failure to pay over a collected withholding tax is not on principles of agency. That's a statutory remedy that says that this is treated now, it's treated as a penalty, effectively. This entity, which had the obligation to collect and pay over this tax, but has failed to pay it over, now is liable in a sense that they are separate from the tax that is owed. It's equivalent to the tax that is owed. The penalty is 100% of the tax that's owed, but the government only collects it once. This is Judge Hughes. I just wanted to, could I just follow up on that? What's the legal authority then for an employee to seek a refund, even if the taxes weren't paid over to the government? Is that also statutory? Is that also based on a statute somewhere, or is it some other principle? Well, I mean, the taxes are deemed paid when they are through the withholding mechanism, and the employee files their return, and the employee files the return, the employer files W-2s, and the accounts are reconciled, and it's clear that the employee doesn't know and has no way of verifying whether their employer is making these payments, but the government does know. And unlike in an excise tax capacity, the employee has to file a return and have to account for their income, and the presumption is that the tax is paid because then the employee can receive the benefits of being compliant with their taxes. The 7422 is, of course, the refund statute, and any overpayment of tax that an employee would seek to recover there is based on the information in their possession. They have a W-2, they know what their salary is, and they know what was withheld from their salary. When the employer has made that withholding and has represented to the government that it has done so in these W-2 filings, the government then knows exactly where to look for the money. And if it's not there, if that money has not been paid over to the government, then there is no, the employee has no cause of action against the employer, but the government can pursue the employer for the penalty under Section 6672 of the Internal Revenue Code. And there is no such enforcement mechanism in place for an excise tax, particularly here, where the transaction giving rise to the excise tax was structured so that the tax would never be triggered. Well, but counsel, I guess you're saying that we shouldn't hold jurisdiction exists because the government doesn't have a mechanism to recoup the money because no parallel statutory provision has been enacted with regard to excise tax. That's all a bunch of policy rhetoric. I mean, for me, the question comes down to whether or not you can bring a suit in the Court of Federal Claims seeking a refund of excise tax that it turns out was never actually paid to the government. And, you know, I'm bothered by this employer-employee analogy, because I think that you're acknowledging that an employee could bring a suit in the Court of Federal Claims for a tax refund, even if the employer never turned the tax over. Is that right? They could, but the government would then be able to look to that employer to collect that tax. So there would be no unjust enrichment. It would even out. Here, the government has no recourse to pursue this uncollected excise tax, which never arose on these facts. And it's not an analogous situation that Congress has sought to provide for. There's no statutory mechanism to collect it, but unremitted excise tax in either direction. And there is certainly not standing for an alleged payor of excise tax to pierce the veil of the various collectors that the chain that stand between him and the government and go straight to the government past where the funds potentially are and recover from the public fisc money that was never there. The government does not possess these funds. There is no overpayment to refund. But apparently the money was collected by the government's agent, right? And you mentioned before that agency relationship in the traditional sense exists here. If that's the case, and it's a very basic fundamental principle of agency law, that the principle, the U.S. government is liable for the actions of its agent. I have three responses to that, Your Honor. First, we do not concede any error in the findings of fact of the court of federal claims that the tax was not collected here and the liability did not arise. Secondly, the internal revenue code supersedes agency principles and governs the conduct of the government here. And there is no statutory right to recover, even if under traditional agency law, might be. And third, as a practical matter, the collection of an excise tax is distinct from the agency relationship of an employer obligated to collect a withholding tax. That's a commercial transaction among unrelated parties. And the code does not provide a comprehensive framework for enforcing these obligations among those parties. And I think that's important here. The excise tax arises when you buy a card from a carrier. You do not receive some presumptive benefits that adheres to you upon completion of that transaction, as you do when you have funds withheld from your paycheck. And I think that we, not to go too deeply into the policy, but you can imagine reasons why one is a much more strictly governed regime than the one that, but why the employment taxing regime is much more strictly governed, because you don't want employers taking advantage of their employees. And the government needs to be able to collect that money. It's almost a... Let me ask you a question before I don't want to run out of time without my asking you this question. What's our standard of review in this case with respect to Rule 63? The fact finding of the Court of Federal Claims is reviewed for clear error. And that includes the finding of whether a fact is material. And because the fact that neither of the witnesses here are able to provide material and disputed testimony as to whether funds were ever paid to the government, that is a factual finding that is subject to clear error review. And in fact, it's been conceded here at argument that none of those funds were ever paid to the government. The only argument that's raised here is that under some novel interpretation of the excise provision, it shouldn't matter whether the government is in actual possession of funds of an overpayment of tax to repay if one or more witnesses were under the impression that some tax might have been included in the purchase price of a telephone card because that was normal industry standard. And I think there's no clear error on this record. No clear error in the fact finding based on this record that the transactions were structured so that the tax never arose within the United States. And by the time union... You're saying we should give deference to the Court of Federal Claims' fact finding about materiality of the testimony. Where exactly can I find that fact finding in the opinion? In the opinion, there is none, Your Honor, and we... How am I supposed to give deference? Wait a minute. You just said repeatedly that we have to give clear error deference to the Court of Federal Claims' fact finding that the testimony here about materiality, right? Didn't you say that? Did I miss that? Understand that? Respectfully, Your Honor, the fact finding that is of deference is the finding that no tax was paid to the government. There is not... Regrettably, there is not finding of fact on the record that Rule 63 would have asked for. The Rule 63 order is not a model of clarity, and there is no discussion of the materiality or disputedness of either witness' testimony. So if there's no discussion of the actual factors that are supposed to be analyzed in assessing the propriety of Rule 63, then why shouldn't we vacate and remand for Judge Wheeler to do that properly or just allow the testimony? Well, the order is problematic, but it's not fatal because as you observed earlier, that error is harmless. The court can affirm based on the record which establishes as a matter of law that the witnesses could not offer material and disputed testimony with respect to union's threshold condition for recovery, which is that the government is in possession of an overpayment of tax to refund. Could they have offered other interesting testimony on standing questions? Quite possibly, but all of those are downstream of the threshold condition for recovery, which is an overpayment of tax to refund. And on that, the record is clear, and no further testimony from any witness can contravene the basic established fact that tax was not paid to the government as all parties agreed. And without that, there is no recovery in a refund suit. Rule 63 only requires a judge to grant a request to recall witnesses if the witness' testimony is material and disputed. Neither Shaw nor Farber could offer testimony that's material and disputed with respect to whether tax was paid to the government. And the government does not draw this nuanced distinction between tax collected and tax paid in the excise context. The tax arises, there is a primarily liable taxpayer, and there is a collector who remits those funds to the government. And these concepts are most meaningful when you're looking at who has standing to recover the tax. They're certainly not meaningful when there's a question of whether the tax has been paid at all. It either has or it is not. It's either in possession of the government or it is not. And if no tax arose, if as here, there was no obligation to pay the tax in the first place, then whatever was collected in the supply chain is not tax. And there is no basis for a downstream wholesaler to recover those funds from the United States. Okay. Counsel, Mr. Coyle will restore two minutes of rebuttal time. Please proceed. Thank you, Your Honor. I want to make a few points. The distinction is not so much between payment and collection as between payment and remittance, because payment and collection happen at exactly the same time. Union Telecom did make the payment. I'm taken aback by the government's position that, for example, if a statutory collection agent for certain collected the tax and then didn't give it to the government, the government appears to be arguing that it would have no recourse against its statutory collection agent and couldn't get the money back. To me, that argument doesn't really hold water. Chief Judge Moore, you had some citations to the statutes. I start first at section 4251A2, which says that the tax imposed by this section shall be paid by the person paying for such services. And then lower down at subsection D1B, the amount of the tax is treated as paid when the card is transferred by any telecommunications carrier to any person who is not such a carrier. Now, if the question is whether tax has been paid, certainly it has, because by operation of law under the statute, upon the transfer of the card, the tax is paid. Counsel, this is Judge Hughes. Doesn't your argument presume that the tax was due in the first place? The tax certainly was due, Your Honor. But that doesn't seem to be the case. I mean, it seems undisputed that this company set up its corporate structure so it didn't have to require a payment of the tax. It seems like you might have a better argument if this was a U.S. entity that was actually charged with collecting a tax. But when you have a foreign company that doesn't owe the tax, which also seems undisputed, then I don't see how your agent of the United States argument holds up, because they're not an agent of the United States. They're a foreign company that's not required to pay the excise tax. May I answer that question? Yeah. Yeah. Let me just put it in a question. Why isn't that different than the Social Security example you gave? Okay. There was a bit there. I'll try to unpack it and respond to everything that Your Honor asked. With respect to whether the tax is due and whether these services were treated as taxable during the relevant period, certainly they were. Because in order to determine whether or not the services are toll telephone service, what matters is whether there was any in the United States. The Deloitte letter and IBT's supposed structuring to avoid a tax that it wasn't even responsible for paying itself, only collecting and remitting, is based on the premise that because there was a payment supposedly that somehow that made cards that were then sold back into the United States under their theory, which we don't concede, that somehow those cards which were providing telecommunication services within the United States would not be subject to the legislature's taxation. I mean, clearly the legislature would not intend for such services to not be treated as taxable during the relevant period. So the Deloitte letter, that was the fundamental mistake in logic and really the linchpin of the Deloitte letter and IBT's explanation of why it didn't remit the tax to the government, which it offered only after the relevant period. So the tax, these services certainly were taxable and it's not up to IDT to determine that, oh, well, somebody else's tax isn't taxable because the tax falls on the taxpayer, Union Telecom. It falls on the transferees of the cards. It's not IDT's tax to avoid. The privity here exists between IDT and the government. Any further questions, colleagues? Okay, hearing none, I thank both counsel and this case is submitted. Thank you, Your Honor.